# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-2178V

| | |
|---|---|
| JO SUTTON,<br><br>                   Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                   Respondent. | Chief Special Master Corcoran<br><br>Filed: August 4, 2025 |

*Jonathan Joseph Svitak, Shannon Law Group, P.C., Woodridge, IL,* for Petitioner.

*Adam Nemeth Muffett, U.S. Department of Justice, Washington, DC,* for Respondent.

### RULING ON ENTITLEMENT[1]

On November 17, 2021, Jo Sutton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on January 12, 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

### I. Relevant Procedural History

On November 30, 2023, Respondent filed a Rule 4(c) Report opposing compensation because Petitioner could not demonstrate that her alleged shoulder pain began within forty-eight hours of vaccination. ECF No. 32 at 7-9. Petitioner thereafter submitted a Motion for a Ruling on the Record on February 20, 2024. Petitioner's Motion for Ruling on the Record ("Mot."), ECF No. 37. Respondent opposed the motion on April 4, 2024, reiterating the arguments set forth in the Rule 4(c) Report. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 39. Petitioner filed a reply on April 25, 2024. Petitioner's Reply Briefing Supporting Motion for Ruling on the Record ("Reply"), ECF No. 41. The matter is ripe for resolution.

### II. Relevant Factual History

Petitioner's past medical history includes prior chiropractic treatment for left lumbar and posterior pelvis/hip region after a fall in October 2020. Ex. 4 at 2, 6, 8, 10, 14.

On January 12, 2021, Petitioner received a flu vaccine in her left shoulder during an annual wellness visit. Ex. 6 at 5. She also reported two more falls without injury that had occurred in the past year. *Id.* at 6. Petitioner contacted her doctor on January 14, 2021, regarding recent lab results, but made no mention of shoulder pain. *Id.* at 3.

Between February 16 and May 12, 2021, Petitioner saw her chiropractor twelve times with complaints of lower back pain that "she has been dealing with [] off and on for close to 30 years" and left knee pain. Ex. 5 at 100, see also Ex. 5 at 58, 61, 64, 67, 70, 73, 77, 81, 84, 86, 90, 93. She also saw Dr. Natalie Peck to establish care on March 2, 2021. Ex. 2 at 11. There is no mention of shoulder pain at this visit.

On May 11, 2021, Petitioner returned to Dr. Peck with complaints of left shoulder pain that "began after getting her flu shot." Ex. 2 at 16. Additionally, she reported "a few weeks from getting her flu vaccination she had some of the worst pain she has ever experienced in her arm." *Id.* The pain was described as extending to her arm and elbow. *Id.* Her range of motion and strength were intact, but she had a positive empty can test and mild anterior shoulder tenderness. *Id.*

Petitioner returned to her chiropractor on June 9, 2021, with continued complaints of low back and left knee pain, "along with [left] shoulder pain as well lately." Ex. 5 at 54. She returned to the chiropractor seven times between June 11 and July 1, 2021, with complaints of pain and limited range of motion in her left shoulder. Ex. 5 at 33, 36, 39, 42, 48, 51. Onset of her pain is noted as June 11, 2021. *See, e.g., id.* at 52.

On July 1, 2021, Petitioner began physical therapy. Ex. 9 at 4-9. Her diagnosis was listed as left shoulder impingement with the date of onset noted as January 12, 2021. *Id.* at 4. An examination showed reduced range of motion, and her symptoms were "consistent with [l]eft shoulder impingement syndrome." *Id.* She attended three physical therapy sessions between July 1 and September 2, 2021. Ex. 9 at 18.

Between July 8 and August 26, 2021, Petitioner made five additional visits to her chiropractor. She reported her left arm was improving, describing her pain as between a one and two out of ten. Ex. 5 at 17, 20, 23, 27.

On January 5, 2022, Petitioner was seen by Dr. Stock for an annual wellness visit. Ex. 3 at 3-4. There is no mention of shoulder pain at this time. Thereafter and through March 7, 2022, Petitioner visited Atlas Chiropractic for pain in her pelvis, hip, and complaints of left anterior shoulder pain. Ex. 4 at 16-42. The origin of her shoulder injury was noted as January 12, 2021. *Id.* at 16.

Petitioner has submitted three affidavits in support of her claim. Ex. 1, 7, 10. She states that following her January 2021 vaccination, she experienced immediate pain and tenderness and that she "believed the pain would resolve with regular movement and the passage of time…." Ex. 1 at 1-2, *see also* Ex. 7 at 1. However, it only worsened and led to her seeking medical treatment in May of 2021. *Id.* at 2-3. Additionally, she stated that she relocated from Dallas, Texas to Corvallis, Oregon in January of 2021. Ex. 1 at 1, Ex. 10 at 4. She explained how the move and ongoing pandemic contributed to her delay in seeking treatment. Ex. 10 at 6-9.

In her supplemental affidavit, Petitioner noted that she keeps a journal, which includes entries from January 2021. Ex. 10 at 2. An entry dated January 13th states "I went to see Dr. Stock yesterday for my wellness + flu (still no Covid vaccine for me – who knows when?) I think Victoria hit a nerve or something." Ex. 12 at 1. Another entry dated January 15 states "I leave in four days. My freaking arm is super sore today. WTF? The office said to take a Tylenol – so that's what I'll do – still effing hurts." *Id.* at 2. Petitioner also provided a detailed course of her injury, including conversations over text with friends in April, June, and July of 2021. Ex. 7 at 3 (citing Ex. 8); Ex. 10 at 12, 16-17 (citing Ex. 13). Further, Petitioner stated that she did not seek care at her chiropractor between February and June of 2021 because she "started treating . . . for lower back pain…." Ex. 10 at 11. However, she "had no idea that chiropractic treatment could be effective for the problems in my shoulder." *Id.*

3

Jill Cochran, a friend of Petitioner, submitted an affidavit in this matter. Ex. 14. She states that shortly after Petitioner received a flu vaccine, they met on several occasions before Petitioner moved to Corvallis, Oregon. *Id.* at 2-3. She recalls Petitioner describing significant pain and reduced range of motion following the vaccination. *Id.* at 3.

Shari Martin, Petitioner's sister, submitted an affidavit in this matter as well. Ex. 15. She states that Petitioner complained of shoulder pain "shortly after she arrived in Corvallis." *Id.* at 3. She also recalls the "trouble finding a doctor in Corvallis" Petitioner had. *Id.*

### III.  Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must preponderantly prove the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

5

### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The record preponderantly establishes onset of injury close-in-time to the January 12, 2021 vaccination. Petitioner first reported shoulder pain that "began after getting her flu shot" on May 11, 2021. Ex. 2 at 16. Thereafter, she linked her shoulder pain to this same vaccination. *See,* e.g., Ex. 9 at 4 (record from July 1, 2021, noting in the physical therapy record that the onset of her shoulder impingement was January 12, 2021); Ex. 4 at 16 (record from January 5, 2022, dating the origin of Petitioner's left shoulder pain as January 12, 2021).

Petitioner's claim of January onset is corroborated by her affidavit evidence. She describes how the Pandemic, difficulty in finding medical care, and a relocation to Corvallis, Oregon, contributed to her delay in seeking treatment. Ex. 10 at 6-9. Petitioner also provided personal journal entries from January 2021 that support her assertion of onset within 48 hours of vaccination. Ex. 12 at 1, 2.

Respondent observes, correctly, that Petitioner had twelve chiropractor visits between February 16, and May 12, 2021, with no mention of shoulder pain. Opp. at 3. Petitioner explained, however, that she was at those visits only receiving treatment for lower back pain, and was not aware her shoulder problems could also have been addressed at the same time by this chiropractic treater. Reply at 17 (citing Ex. 10 at 11). I deem this a reasonable explanation for why Petitioner did not address shoulder concerns at this time.

Respondent also argues that Petitioner only sought treatment four months after her vaccination, and that her first reports regarding onset do not describe her pain as immediate. Opp. at 11. Additionally, records noting pain arising close-in-time to the vaccination should be given little weight because they were made "more than six months" after January 12, 2021. *Id.* at 12.

While Petitioner did delay in seeking treatment, when the record is viewed in its entirety there is ample evidence to find proper onset began near in time to the vaccination. Further, Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner generally linked her shoulder pain to the January 12, 2021 vaccination. There is also significant evidence to corroborate the alleged timeline, including reasons for the delay such as the COVID pandemic, a significant relocation, and the assumption that her symptoms would subside.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination. (Of course, delay and inattention to a purportedly-acute condition, as here, will result in a reduced pain and suffering award in this case).

### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on February 7, 2022, in the United States. Ex. 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 1; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master
